UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROXANNE ALLEN,

        Plaintiff,

v.                                                                                          7:10-CV-1156
                                                                                                          (GTS)
COMM'R OF SOC. SEC.,

        Defendant.
_____

APPEARANCES:                                                                OF COUNSEL:

CONBOY, McKAY, BACHMAN & KENDALL, LLP    LAWRENCE D. HASSELER, ESQ.
  Counsel for Plaintiff
307 State Street
Carthage, New York 13619

SOC. SEC. ADMIN.                                                            THOMAS C. GRAY, ESQ.
  OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, New York 10278

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

        Currently before the Court, in this Social Security action filed by Roxanne Allen ("Plaintiff") against the Commissioner of Social Security ("Defendant") pursuant to 42 U.S.C. § 405(g), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 15.) For the reasons set forth below, Defendant's motion is granted in part and denied in part, and Plaintiff's motion is granted in part and denied in part.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born on August 25, 1960. She did not graduate high school; however, in 1992, she earned her External Diploma Program high-school equivalency degree. During her life, Plaintiff has worked as a cashier, food service worker, bartender, gas station attendant, and office receptionist. Generally, her alleged disability consists of osteoarthritis of the left knee, polyarthritis in the cervical and lumbar spines, and amblyopia of the right eye (as well as fibromyalgia, carpal tunnel syndrome, depression and generalized anxiety disorder). Her disability onset date was December 26, 2003. Her date last insured was March 31, 2008.

   B.   **Procedural History**

On July 19, 2007, Plaintiff applied for Social Security Disability Insurance ("disability insurance") alleging a disability onset date of December 26, 2003. (Dkt. No. 9, Attach. 5 at 2-5.) In November 2007, Plaintiff's application for disability insurance was initially denied. (Dkt. No. 9, Attach. 3 at 2.) Plaintiff filed a written request for a hearing; and on October 14, 2009, Plaintiff testified before Marie Greener, an Administrative Law Judge ("the ALJ"). Following the hearing, the ALJ issued a written decision denying Plaintiff's application for disability insurance, on February 26, 2010. (Dkt. No. 1, Attach. 2.) On September 9, 2010, the Social Security Appeals Council denied Plaintiff's request for review of the ALJ's Decision. (Dkt. No. 9, Attach. 2 at 2.) On September 27, 2010, Plaintiff filed the present action with the Court to review the ALJ's Decision. (Dkt. No. 1.)

## C. The ALJ's Decision

In her Decision, the ALJ made the following five findings of fact and conclusions of law. (*See generally* Dkt. No. 1, Attach. 2.) First, the ALJ found that Plaintiff suffers from three severe impairments, specifically knee osteoarthritis of the left knee (evidenced by "swelling, tenderness to palpation, a slight limp, decreased range of motion, and clicking with passive flexion and extensions"), poly-arthritis (evidenced by "positive straight-leg raising tests, tenderness to palpation, . . . reduced range of motion in [Plaintiff's] cervical and lumbar spines[, . . .] C5-6 osteophytes and disc space narrowing" and narrowing in the lumbar spine), and amblyopia of the right eye. (Dkt. No. 1, Attach. 2 at 6-7.) The ALJ found that Plaintiff's fibromyalgia and carpal tunnel syndrome diagnoses are not medically determinable impairments, and Plaintiff's depression and generalized anxiety disorder are not severe impairments. (*Id.* at 7.)

Second, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Pt. 404, Sbpt. P, App. 1. (*Id.* at 8.) The ALJ considered listings 1.02 and 14.09. (*Id.*)

Third, after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence, [including] . . . opinion evidence," the ALJ found that Plaintiff retained the residual functional capacity ("RFC") "to lift and/or carry 10 pounds, stand and/or walk two hours in an eight-hour day, sit six hours in an eight-hour day, [] push and/or pull 10 pounds[,] . . . occasionally stoop, balance, crouch, and climb stairs and ramps[, but] could not kneel, crawl, or climb ladders or scaffolds[, and] . . . had no limitations in her ability to reach, handle, finger, and feel, but cannot perform tasks requiring

good binocular vision." (*Id.*)  In making this determination, the ALJ assigned "considerable . . . [but] not . . . controlling weight" to the opinions of Plaintiff's treating medical provider, Family Nurse Practitioner Andrew LaFrance ("FNP LaFrance").  (*Id.* at 10.)  In addition, the ALJ assigned "considerable weight" to the opinion of Dr. Justine Magurno, who conducted a consultative examination of Plaintiff in December 2009.  (*Id.* at 10-11.)  The ALJ did not consider the opinions of Dr. Brij Nandan Sinha because his medical license was surrendered.  (*Id.* at 11.)  The ALJ found that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms, . . . [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible . . . ."  (*Id.*)

Fourth, the ALJ found that Plaintiff "was unable to perform her past relevant work."  (*Id.*)

Fifth, and finally, the ALJ found that, "considering the [Plaintiff's] age, education, work experience, and residual functional capacity, there [are] jobs that exist[] in significant numbers in the national economy that the [Plaintiff] could . . . perform[]."  (*Id.* [citation omitted.])

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes five separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues that the ALJ erred in failing to identify Plaintiff's neck and lower back disorder and Plaintiff's carpal tunnel syndrome as severe impairments.  (Dkt. No. 11 at 13.)

Second, Plaintiff argues that the ALJ erred in neglecting to "specify [the] weight she [assigned] to the various medical providers of record."  (*Id.* at 16.)

4

Third, Plaintiff argues that the ALJ was required (but failed) to "outline her analysis with sufficient specificity" when she determined that Plaintiff's complaints "are not supported by objective evidence or the opinions of record." (*Id.* at 18, 19.)

Fourth, Plaintiff argues that the ALJ erred in failing to take into consideration the following items when making her RFC assessment: (1) FNP LaFrance's assessment of Plaintiff's "limitations showing that[,] in addition to the limitations acknowledged by the ALJ," Plaintiff cannot crouch or stoop; (2) Dr. Magurno's assessment from December 2009, showing that Plaintiff has "'marked limitations' for walking, standing, lifting, carrying, pushing, pulling, and squatting, and moderate limitations for reaching and bending"; and (3) Plaintiff's neck and lower back disorder and her carpal tunnel syndrome. (*Id.* at 20-21.)

Fifth, and finally, Plaintiff argues that the ALJ did not properly evaluate whether there is work in the national economy that Plaintiff can perform because the ALJ improperly relied the Medical-Vocational Guidelines contained in 20 C.F.R. Pt. 404, Sbpt. P, App. 2 ("the grids") and the ALJ did not seek the testimony of a vocational expert. (*Id.* at 23, 25.)

### B. Defendant's Arguments

In response, Defendant makes five arguments. First, Defendant argues that the ALJ did, in fact, evaluate Plaintiff's neck and back disorder as severe impairments because the ALJ incorporated the disorder into her finding that Plaintiff's "polyarthritis" impairment is severe. (Dkt. No. 15 at 7.) In addition, Defendant argues that the ALJ properly found that Plaintiff's carpal tunnel syndrome was not a medically determinable impairment because it was not supported by any "objective tests" (i.e., "medical signs and laboratory findings). (*Id.* at 8.)

Second, Defendant argues that the ALJ properly specified the amount of weight she afforded Plaintiff's treating medical provider, FNP LaFrance, and Dr. Magurno's opinions. (*Id.* at 9-10.)

Third, Defendant argues that the ALJ's assessment of Plaintiff's credibility is supported by the evidence, but, in any event, "[s]ubjective symptomatology cannot, by itself, be the basis for a finding of disability." (*Id.* at 16-18.)

Fourth, Defendant argues that the ALJ's residual functional capacity ("RFC") assessment is supported by the record. (*Id.* at 11-16.)

Fifth, Defendant argues that, because the ALJ determined that Plaintiff retained an RFC assessment for sedentary work, the ALJ properly relied on the grids to find that Plaintiff is not disabled because the ALJ correctly considered Plaintiff's exertional and non-exertional limitations. (*Id.* at 19.)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the determination of the Social Security Commissioner ("the Commissioner") will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.   Social Security Disability Standard

An individual is considered disabled if she is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has promulgated a five-step analysis to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. More specifically, the hearing officer

must consider the following five items in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or medically equals an impairment listed under 20 C.F.R. Pt. 404, Sbpt. P, App. 1, and meets the duration requirement; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant is unable to resume his past relevant work, whether the claimant's RFC (combined with his age, education, and work experience) will allow her to adjust to other work. *Id.* The claimant bears the burden of proof on the first four steps; the Commissioner bears the burden on the last step. *Burgess v. Astrue*, 537 F.3d 117, 118 (2d Cir. 2008).

## IV.  ANALYSIS

### A.  Whether the ALJ Erred in Failing to Identify Plaintiff's Neck and Lower-Back Disorder and Plaintiff's Carpal Tunnel Syndrome as Severe Impairments

After carefully considering the matter, the Court answers this question in the negative as it relates to Plaintiff's neck and lower-back disorder, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 7-8 [Def.'s Memo. of Law].) However, the Court answers this question in the affirmative as it relates to Plaintiff's carpal tunnel syndrome for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 11 at 15-16 [Plf.'s Memo. of Law].) The Court would add only that, because the evidence regarding Plaintiff's carpal tunnel syndrome is (at the very least) inconsistent, the ALJ had a duty to, but failed to, expand the record on this point before concluding that the syndrome was medically indeterminable.

More specifically, the ALJ was required to consider "all [of Plaintiff's] symptoms, including pain, and the extent to which [Plaintiff's] symptoms can reasonably be accepted as consistent with the objective medical evidence [i.e., medical signs and laboratory findings] and


other evidence."[1]  20 C.F.R. § 404.1529(a).  The objective medical evidence suggesting that carpal tunnel syndrome is one of Plaintiff's medically determinable impairments includes the following: (1) FNP LaFrance's conclusions that Plaintiff has carpal tunnel (Dkt. No. 9, Attach. 7 at 43, 49, 51); (2) Dr. Magurno's finding that Plaintiff has "mild limitations for fine motor activities due to carpal tunnel" (*id.* at 125); and (3) a disability analyst's finding that Plaintiff should "avoid rapid repetitive handling or fingering on the right [hand], due to carpal tunnel" (*id.* at 83).  In addition, Plaintiff testified that she has carpal tunnel in her right wrist.  (Dkt. No. 9, Attach. 2 at 41.)

However, the record also contains the following evidence that is inconsistent with the suggestion that one of Plaintiff's medically determinable impairments is carpal tunnel: (1) FNP

---

[1] "Medical signs" "are anatomical, physiological, or psychological abnormalities which can be observed, apart from [Plaintiff's] statements . . . . Signs must be shown by medically acceptable clinical diagnostic techniques . . . . They must also be shown by observable facts that can be medically described and evaluated."  20 C.F.R. § 404.1528(b).
        "Laboratory findings" "are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques."  20 C.F.R. § 404.1528(c).
        "Other evidence" means "the kinds of evidence described in 20 C.F.R. §§ 404.1512(2) through (8) and 404.1513(b)(1), (4), and (5), and (d)."  20 C.F.R. § 404.1529(a).  Section 404.1512(2) through (8) describes evidence such as "[o]ther evidence from medical sources . . . and statements about treatment you have received"; "[s]tatements you or others make about your impairment(s), your restrictions, your daily activities, your efforts to work, or any other relevant statements you make to medical sources during the course of examination or treatment, or to [the Social Security Administration] during interviews, on applications, in letters, and in testimony in our administrative proceedings"; "information from other sources, as described in § 404.1513(d)"; "[d]ecisions by any governmental or nongovernmental agency about whether you are disabled or blind"; "findings, other than the ultimate determination about whether you are disabled, made by State agency medical or psychological consultants and other program physicians or psychologists, . . . and opinions expressed by medical experts . . . that we consult based on their review of the evidence in your case record."  20 C.F.R. § 404.1512(2) through (8).  Section 404.1513(b)(1), (4), and (5) describe evidence such as "[m]edical history," "[d]iagnosis (statement of disease or injury based on its signs and symptoms)," "[t]reatment prescribed with response, and prognosis."  20 C.F.R. § 404.1513(1), (4), (5).  Section 404.1513(d) describes evidence of "medical sources . . . [such as] nurse-practitioners"; "educational personnel"; "public and private social welfare agency personnel"; and "other non-medical sources . . . [such as] spouses, parents, and other caregivers . . . ."  20 C.F.R. § 1513(d).

LaFrance's medical source statements from 2007 and 2009 that make no mention of Plaintiff's carpal tunnel syndrome, and indicate that Plaintiff has no limitations in handling (gross manipulation), fingering (fine manipulation), or feeling (skin receptors) (Dkt. No. 9, Attach. 7 at 33, 38, 111); (2) Dr. Magurno's medical source statement from 2009 indicating that Plaintiff's "[h]and and finger dexterity [are] intact[,] [g]rip strength [is] 5/5 bilaterally[, and Plaintiff] can use a zipper and button and tie a bow normally," and that Plaintiff can frequently or occasionally handle, finger, and feel (*id.* at 124, 129); and (3) Plaintiff's testimony that she is able to, inter alia, knit, wash dishes, and cook three meals per day (Dkt. No. 9, Attach. 2 at 40-41).

      Because the evidence regarding Plaintiff's carpal tunnel syndrome is (at the very least) inconsistent, the Court finds that the ALJ had a duty to develop the administrative record on this point. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."); *see also West v. Barnhart*, 06-CV-0275, 2008 WL 2561991, at *3 (W.D.N.Y. June 25, 2008) ("Under 20 C.F.R. § 404.1512[e], the ALJ must recontact a claimant's treating physician when the evidence received is inadequate . . . to determine whether [the claimant is] disabled.") (quotation marks omitted). However, the ALJ failed to so develop the record.

      For all of these reasons, the Court finds that the ALJ's determination that Plaintiff's neck and back disorder is a severe impairment is supported by substantial evidence; and that the ALJ's determination that Plaintiff's carpal tunnel syndrome is not a severe impairment is not supported by substantial evidence.

### B. Whether the ALJ Erred in Neglecting to "Specify [the] Weight She [Assigned] to the Various Medical Providers of Record"

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 7-8 [Def.'s Memo. of Law].) The Court would add only that the ALJ specifically noted the amount of weight she assigned to each of the medical provider's opinions. Indeed, the ALJ wrote in her Decision that she afforded FNP LaFrance's opinions considerable, but not controlling, weight because "the extent of [Plaintiff's] limitations reported by [FNP] LaFrance were not entirely supported [by Plaintiff's] treatment notes or treatment regimens." (Dkt. No. 1, Attach. 2 at 10.) The ALJ also specifically noted in her Decision that she afforded no weight to the opinions of Dr. Brij Sinha because Dr. Sinha surrendered his medical license. (*Id.* at 11.) Lastly, the ALJ specifically noted in her Decision that she afforded Dr. Magurno's opinions considerable weight, which were based on a "thorough examination" of Plaintiff and a review of Plaintiff's records. (*Id.*)

For these reasons, the Court finds that the ALJ applied the correct legal standard in assessing the weight to assign each of the medical providers' opinions, and that the amount of weight that the ALJ assigned is supported by substantial evidence.

### C. Whether the ALJ Erred in Failing to "Outline Her Analysis with Sufficient Specificity" When She Determined That Plaintiff's Complaints "Are Not Supported By Objective Evidence Or the Opinions of Record"

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 7-8 [Def.'s Memo. of Law].) The Court would add only the following analysis.

Although "[i]t has been established . . . that subjective [p]ain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence[,] . . . [a]n ALJ has the discretion to evaluate the credibility of a

11

claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *McLaughlin v. Sec'y of Health, Ed. and Welfare of U.S.*, 612 F.2d 701, 705 (2d Cir. 1980) (internal quotation marks omitted), *accord*, *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984). "An ALJ rejecting subjective testimony concerning pain and other symptoms must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Marks v. Apfel*, 13 F. Supp.2d 319, 323 (N.D.N.Y. 1998) (Hurd, M.J.); *see also Williams v. Bowen*, 859 F.2d 255 (2d Cir. 1988) ("A finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record.").

Here, the ALJ based her determination that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible" on five specific findings. (Dkt. No. 1, Attach. 2 at 11.) First, the ALJ found that Plaintiff's "allegations were . . . inconsistent with her vast array of activities of daily living." (*Id.*) Although the ALJ did not list the specific daily activities that she found inconsistent with Plaintiff's allegations, the record reflects that Plaintiff testified that she is able to drive independently (Dkt. No. 9, Attach. 2 at 32), clean the dishes (*id.* at 40), share the duties of cleaning the bathroom with her husband (*id.*), cook daily (i.e., "eggs and toast" for breakfast, "soup or sandwich" for lunch, "hamburgers or hot dogs or . . . a roast" for dinner) (*id.*), share the duties of grocery shopping with her husband (*id.* at 40-41), knit (*id.* at 41), read (*id.*), and use the computer "once in a great while" (*id.*).

Second, the ALJ found that Plaintiff "received conservative treatment, refused injections, and did not have any surgeries." (Dkt. No. 1, Attach. 2 at 11.)

12

Third, the ALJ found that Plaintiff's medications decreased her pain. (*Id.*)

Fourth, the ALJ found that, although Plaintiff "reported using a knee brace, ankle air cast, right wrist brace, and [a] cane, she did not have any of the above with her at the consultative examination." (*Id.*)

Fifth, and finally, the ALJ found that the wrist brace and case were not prescribed by a medical provider. (*Id.*)

Because these findings by the ALJ are supported by substantial evidence, and because the Court is mindful that the ALJ is "free to accept or reject testimony like that given by [Plaintiff]," the Court finds that the ALJ properly evaluated Plaintiff's credibility. *See Williams*, 859 F.2d at 260 ("As a fact-finder, an ALJ is free to accept or reject testimony . . . .").

### D. Whether the ALJ Erred in Failing to Take Into Consideration Certain Pieces of Evidence in Making Her Determination About Plaintiff's RFC

After carefully considering the matter, the Court answers this question in the affirmative for the first and second reasons stated in Plaintiff's memorandum of law. (Dkt. No. 11 at 21 [Plf.'s Memo. of Law].) The Court would add only the following analysis.

A person's residual functional capacity "is the most [a person] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a). A person's "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR96-8p. Adjudicators assessing a person's RFC must take into account "all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements'–i.e., opinions about what the individual can still do despite his or her impairment(s)–submitted by an individual's treating source or other acceptable medical sources." *Id.* "The RFC assessment

13

must include a narrative discussion describing how the evidence supports each conclusion . . . . The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

Here, in her Decision, the ALJ noted that she considered the following record evidence when determining Plaintiff's RFC: (1) x-rays of Plaintiff's knee and spine; (2) Plaintiff's orthopedist's examination notes between August 2006, and June 2007; (3) FNP LaFrance's physical examination notes dated November 2011, through August 2007, and again December 2007, through April 2009; (4) FNP LaFrance's medical source statements from July 2007, and September 2009 (including FNP's opinions that Plaintiff cannot crouch or stoop, that Plaintiff's pain precludes Plaintiff from adequately performing daily activities, and that Plaintiff's medications (Vicodin and Soma) "would severely limit her effectiveness in the work place due to distraction, inattention, drowsiness, etc."); (5) a disability examiner's opinion from November 2007; (6) Dr. Magurno's orthopedic examination notes and medical source statement from December 2009; and (7) Plaintiff's subjective evaluations of her symptoms. (Dkt. No. 1, Attach. 2 at 9-11.) Because a review of the record demonstrates that this list comprises "the relevant evidence in the case record," the Court finds that the ALJ considered the proper evidence in determining Plaintiff's RFC assessment. SSR96-8p.

However, although the ALJ provided a citation to each piece of the relevant record, she failed to adequately explain how the pieces of the record support her determination of Plaintiff's RFC assessment, or, if she rejected them, why she did so. Six examples are illustrative of this point.

14

First, although the ALJ notes that FNP LaFrance's medical source statements from July 2007, and September 2009, indicate that Plaintiff should never crouch or stoop, the ALJ failed to explain why Plaintiff's RFC assessment includes the ability to occasionally crouch and stoop. (Dkt. No. 1, Attach. 2 at 10.)  Second, although the ALJ notes that FNP LaFrance's medical source statements from July 2007, and September 2009, indicate that Plaintiff's "pain was present to such an extent as to be distracting to adequate performance of daily activities or work and was greatly increased by physical activity," the ALJ failed to explain how that opinion supported her RFC assessment of Plaintiff, or, if she rejected them, why she did so.  (*Id.*)  Third, although FNP LaFrance's physical examination notes indicate that Plaintiff has carpal tunnel syndrome, the ALJ does not describe how that diagnosis supports her RFC assessment of Plaintiff, or, if she rejected it, why she did so.  (*See generally* Dkt. NO.1, Attach. 2.)  Fourth, although the ALJ notes that Dr. Magurno's medical source statement from December 2009, contained "positive findings" and opined that Plaintiff can stand for ninety minutes per day for forty-five minutes at a time, and walk one hour per day for thirty minutes at a time, the ALJ did not explain how these findings support an RFC assessment that includes "stand[ing] and/or walk[ing] two hours in an eight hour day . . . ."  (*Id.* at 10-11.)  Fifth, the ALJ did not explain whether Dr. Magurno's opinion that Plaintiff has "[m]arked limitations for walking, standing, lifting, carrying, pushing, pulling, and squatting" supported her RFC assessment of Plaintiff, or, if she rejected it, why she did so. (*See generally* Dkt. No. 1, Attach. 2.)  Sixth, and finally, although Dr. Magurno's orthopedic examination concluded that Plaintiff has "mild limitations for fine motor activities due to carpal tunnel syndrome," the ALJ did not explain how this conclusion supported her RFC assessment of Plaintiff, or, if she rejected it, why she did so.  (*Id.*)

Because the ALJ failed to explain why portions of FNP LaFrance's and Dr. Magurno's medical source statements were not adopted, the Court finds that the ALJ did not apply the correct legal standard in determining Plaintiff's RFC assessment. *See, e.g.*, SSR96-8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

> **E.     Whether the ALJ Properly Evaluated the Availability of Work in the National Economy That Plaintiff Is Capable of Performing**

After carefully considering the matter, the Court answers this question in the affirmative.

Under the Social Security Act, the Commissioner bears the burden of proof for the final determination of disability. *Pratt v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996). Generally, if a claimant suffers only from exertional impairments, then the Commissioner may satisfy his burden by resorting to the applicable grids."[2] *Pratt*, 94 F.3d at 39. The grids "take[ ] into account the claimant's [RFC] in conjunction with the claimant's age, education and work experience." *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). Ordinarily, the ALJ need not consult a vocational expert, and may satisfy this burden "by resorting to the applicable grids." *Rosa*, 168 F.3d at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2).

The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids.[3] *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986). The testimony of a vocational expert

---

[2]     An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. §§ 404.1569a(b), 416.969a(b); *see also Rodriguez v. Apfel*, 96-CV-8330, 1998 WL 150981, at *10, n.12 (S.D.N.Y. Mar. 31, 1998).

[3]     A "non-exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

that jobs exist in the economy which claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish her ability to work-over and above any incapacity caused solely from exertional limitations so that she is unable to perform the full range of employment indicated by the medical vocational guidelines." *Bapp*, 802 F.2d at 605-06.  "Significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."  *Id.* at 606.

Where a claimant's non-exertional limitations significantly diminish her ability to work, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform" to satisfy his burden at step five.  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 604).  Therefore, when considering non-exertional impairments, the ALJ must first consider whether the range of work the claimant could perform was so significantly diminished as to require the introduction of vocational testimony.  *Samuels v. Barnhart*, 01-CV-3661, 2003 WL 21108321, at *12 (S.D.N.Y. May 14, 2003) (holding that the regulations require an ALJ to consider the combined effect of a plaintiff's mental and physical limitations on his work capacity before using the grids).

Here, although Plaintiff's RFC assessment includes both exertional and non-exertional limitations, the ALJ relied on only the grids in determining that Plaintiff is not disabled.  (Dkt. No. 1, Attach. 2 at 12.)  More specifically, the ALJ concluded that, because Plaintiff could perform "the full range of sedentary work, considering [her] age, education, and work experience, a finding of 'not disabled' is therefore directed by Medical-Vocational Rule

---

Examples of non-exertional limitations are difficulties with sight or vision, difficulties tolerating dust or fumes, difficulties performing manipulative or postural functions (i.e., reaching, handling, stooping, climbing, crawling, or crouching).  20 C.F.R. §§ 404.1569a(c)(1)(iv), (v), (vi), 416.969a(c)(1)(iv), (v), (vi); *see also Rodriguez*, 1998 WL 150981, at *10, n.12.

201.18."[4]  (Dkt. No. 1, Attach. 2 at 12.)  This conclusion does not take into account, however, Plaintiff's non-exertional limitations, including (1) her inability to crawl, kneel, or climb ladders or scaffolds, (2) her ability to only occasionally stoop, balance, crouch, climb stairs or ramps, and (3) her inability to perform any activity that requires good binocular vision.[5]  (*Id.* at 8, 12.)  Although the ALJ did conclude that these "additional limitations had little or no effect on the occupational base of unskilled sedentary work," the Court finds that such conclusion does not adequately address whether Plaintiff's non-exertional limitations significantly diminish her ability to work over and above any incapacity caused solely from exertional limitations so that she is unable to perform the full range of employment indicated by the grids.  *Bapp*, 802 F.2d at 605-06.

For all of these reasons, the Court finds that the ALJ did not apply the correct legal standards at step five of the Social Security disability analysis by erroneously relying on the grids to determine that Plaintiff is not disabled.

---

[4]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

[5]  In addition, the ALJ's explanation for finding Plaintiff not disabled based on the grids failed to take into account some of the non-exertional limitations noted by both FNP LaFrance (i.e., Plaintiff's pain is present to an extent that it is distracting to adequate performance of daily activities, and physical activity increases Plaintiff's pain that will cause her to abandon work) (Dkt. No. 9, Attach. 7 at 112) and Dr. Magurno (i.e., Plaintiff can stand for only forty-five minutes at a time for no more than ninety minutes per work day, and Plaintiff's mild limitations for fine motor activities) (*id.* at 125, 128).

As discussed in Part IV.D of this Decision and Order, however, the ALJ erred in failing to explain how some of these findings by the medical providers supported her RFC assessment, or if she rejected them, why she did so.  The Court finds that such failure to apply the correct legal standards in assessing Plaintiff's RFC affected whether the ALJ properly decided step five of the Social Security disability analysis promulgated by the Social Security Administration because step five requires consideration of whether, given Plaintiff's age, education, work experience, *and RFC*, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.  20 C.F.R. § 404.1520(a)(4)(v).

**ACCORDINGLY**, it is

ORDERED that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED in part** and **DENIED in part**; and it is further

ORDERED that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED in part** and **DENIED in part**; and it is further

ORDERED that Defendant's decision denying disability benefits is **AFFIRMED in part** and **DENIED in part** consistent with this Decision and Order; and it is further is

ORDERED that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: September 12, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge